IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ORBIS CASCADE ALLIANCE,        )
                                     )
        Plaintiff,           )   TC-MD 120812C
                                     )
    v.                     )
                                   )
LANE COUNTY ASSESSOR,       )
                                   )
        Defendant.      )   **DECISION**

Plaintiff appeals the denial of a property tax exemption for property identified as Account 1664620 (subject property) for the 2012-13 tax year. A telephone trial was held on June 5, 2013. John F. Helmer (Helmer), Executive Director of Plaintiff, appeared and testified on behalf of Plaintiff. Lori Halladey (Halladey), Exemption Specialist of Lane County Assessment and Taxation appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 4 and Defendant's Exhibits A through E were submitted without objection.

## I. STATEMENT OF FACTS

Plaintiff, Orbis Cascade Alliance (Orbis), applied for tax exempt status under ORS 307.130 for a portion of property it leases. (Ptf's Compl at 1.) Orbis is a "consortium of non-profit academic institutions that is itself a non-profit entity organized and operated as described under section 501(c) of the Internal Revenue Code." (Ptf's Compl at 2.) Helmer testified that Orbis is a "literary institution dedicated to propagating and spreading the use of books." Orbis was created and organized in 2011 for charitable scientific and education purposes including "strengthening the libraries of public and private nonprofit academic institutions in order to support the work of their students, faculty, staffs, and researchers." (Def's Ex D at 2.) Prior to its incorporation, the services Orbis provides were provided by the University of Oregon, and

involved that institution and four other universities. Membership grew over the years and the task became somewhat unmanageable, so Plaintiff was formed to take over the operation. Plaintiff argues that it "should be allowed to claim an exemption from property taxes for that portion of the premises [it] lease[s] to conduct [its] centralized programs." (Ptf's Compl at 2.)

At trial, Helmer testified that Plaintiff provides numerous resources to both its members and non-members. The first resource Helmer described with the aid of an exhibit was a list of institutions that participate in Plaintiff's "Electronic Resource Program." (*See* Ptf's Ex 1.) Helmer testified that this program is "essentially a group purchasing of databases and ebooks" and that the program is open to a wide variety of libraries and universities. Helmer testified that "it is incumbent on us to open this program to a broad participation," so both members and non-members are able to access the program. Helmer testified that one of the most "important things we do as we buy electronic information for that same group * * * [is] we negotiate a contract with publishers and vendors" to allow anyone who walks into a library or university to have free access to their databases, regardless of whether they are associated with a college or university. (*See* Ptf's Ex 2.)

The second resource Helmer identified was a list of institutions that participate in Plaintiff's "Northwest Digital Archives" program. (*See* Ptf's Ex 3.) The digital archives program was created by Plaintiff to provide access to original letters, diaries, and photographs. (*Id.*) Helmer testified that the program is supported by the listed institutions, but anyone in the world can access it. Access to the program "is freely available on the Web and does not require payment of any fees." (*Id.*) The general public can access this program using their personal computer or a public terminal. (*See id.*)

/ / /

The third resource Helmer presented was an extensive list of institutions that participate in Plaintiff's courier program. (*See* Ptf's Ex 4.) Helmer testified that Plaintiff's courier service delivers print materials to libraries in Oregon, Washington, and Idaho regardless of whether the library is one of Plaintiff's member organizations. (*See id*.) Helmer testified that "we feel this is the right thing to do, to make this available beyond just our clients." Helmer concluded by saying his exhibits demonstrate that although Plaintiff relies on membership to acquire materials and provide its services, a huge part of its mission is to spread the benefits of digital information access well beyond the membership so it can direct the benefits to the public at large.

Defendant denied Plaintiff's application for tax exempt status under ORS 307.130 because the "organization does not qualify under this statute." (Def's Ex C at 1.) At trial Defendant testified that Plaintiff's application was denied because Plaintiff does not provide a direct benefit to the public as required by OAR 150-307.130(3)(b). Rather, Defendant argued that Plaintiff provides a direct benefit to the colleges and universities. Halladey testified that the universities "are the ones actually providing the access and service directly to the public as far as non-members." Defendant argued that the law requires that the public benefit be the primary purpose rather than a by-product, so the application was denied.

## II. ANALYSIS

The issue in this case is whether Plaintiff is entitled to a property tax exemption under ORS 307.130[1] as a nonprofit corporation. ORS 307.130(1)(c)(B) defines nonprofit corporation as a corporation that "[i]s organized and operated as described under section 501(c) of the Internal Revenue Code." The parties do not dispute Plaintiff's federal (and state) nonprofit status. The issue is whether Plaintiff is a qualifying charity for state property tax exemption

---

[1] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2011.

purposes. Not all qualifying federal IRC nonprofits qualify for the state's charitable property tax exemption provided in ORS 307.130. The particular dispute is whether Plaintiff satisfies the requirements of the applicable administrative rule addressing that statute. In particular, subsection (3)(b) of OAR 150-307.130-(A), is at issue, and provides in relevant part:

> "The activity conducted by the charitable institution must be for the *direct good or benefit of the public or community at large*. Public benefits must be the primary purpose rather than a by-product. An organization that is established primarily for the benefit of its members, is not a qualifying charity."

OAR 150-307.130-(A)(3)(b) (emphasis added.)

The burden of proving entitlement to an exemption is on the person claiming the exemption. In analyzing exemption cases, the court is guided by the principle that taxation is the rule, and exemption from taxation is the exception. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 426-27, 723 P2d 320 (1986). Courts are to interpret exemption statutes with a strict, yet reasonable construction to achieve the legislature's intent. *SW Oregon Pub. Def. Services v. Dept. of Rev.*, 312 Or 82, 88-89, 817 P2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 95 (2002).

Looking particularly at the operative words of the rule over which the parties focus their dispute, Plaintiff's activities must be "for the direct good or benefit of the public or community at large." OAR 150-307.130-(A)(3)(b). At trial Helmer argued that Plaintiff is entitled to an exemption because the activities it conducts are for the direct good or benefit of the public or community at large, and public benefits are Plaintiff's primary purpose rather than a by-product. Helmer argued that Plaintiff serves the students and teachers at nonprofit and government

organizations, including both member and non-member colleges and universities. Defendant argued that Plaintiff does not qualify for tax exempt status because the direct benefit is to the colleges and universities and the benefit to the public is a by-product. Defendant insists that the colleges and universities get the benefit and pass it through to the public.

Defendant misinterprets the scope of the rule. The distinction in the rule is not between direct and indirect benefit to the public, but whether the benefit is for the direct good or benefit of the public rather than primarily for the benefit of the organization's members, or simply a by-product of the organization's primary activity. The rule provides: "[p]ublic benefits must be the primary purpose rather than a by-product. An organization that is established primarily for the benefit of its members, is not a qualifying charity." OAR 150-307.130-A(3)(b). The rule goes on to provide an example of a non-qualifying organization: "a rifle club formed primarily for the pleasure of its members [that] also provides safety information and instruction[,]" presumably to the public. The organization in the rule's example fails to qualify for the exemption because "the club's primary purpose is not to provide a direct benefit to the public[,]" but rather to its own members. In this case, Plaintiff's primary purpose is to benefit the public or community at large. The fact that they use colleges, universities, and libraries as part of their effort does not mean that the public benefit is a by-product.

This court has previously allowed a charitable property tax exemption for a corporation whose direct public benefit was also at issue. *See The Enterprise for Employment and Education v. Marion County Assessor* (*Enterprise for Employment*), TC-MD No 070841C, WL 36284750 (October 16, 2001). In that case, Plaintiff was a Local Workforce Investment Board that contracted with service providers who then provided service to adults and dislocated workers. *Id* at *1. Defendant in *Enterprise for Employment* denied Plaintiff's application for property tax

exempt status, arguing that "the organization must itself provide charity directly to the recipients, and not act through third parties, in order to qualify for tax-exempt status." *Id.* at *3. The court disagreed, holding "[t]he service providers with whom Plaintiff contracts are not the object of Plaintiffs charity, nor are they the ones who directly benefit from Plaintiff's activities." *Id.* In granting the exemption, the court concluded that "Plaintiff's only benefit is to the public or community at large." *Id.*

That case is contrasted with *Grantmakers for Education v. Multnomah County Assessor* (*Grantmakers*), TC-MD No 021216E, WL 22119790 (Aug 21, 2003), where the court denied a charitable property tax exemption for a corporation whose direct public benefit was at issue. Plaintiff was a membership organization and the primary recipients of Plaintiff's services were paying members who paid for assistance in improving *their* philanthropic and charitable endeavors, so that they would have more money to channel to the educational programs they supported. *Id.* at *1. The *Grantmakers* court found that Plaintiff's activities were directed at the foundations it worked with, who were the primary recipients of its activities, and that the public education system benefited indirectly through the increased availability of funds they raised, because the foundations were ultimately responsible for deciding where and how to distribute their money. *Id.* at *2.

The court concludes Plaintiff is involved in a qualifying charitable work. There is no evidence that Plaintiff's property is not "actually and exclusively occupied or used" in the charitable work Plaintiff carries on. ORS 307.130(2)(a). Moreover, Plaintiff satisfies the three requirements set forth by the Oregon Supreme Court in *SW Oregon Pub. Def. Services*, 312 Or 82, 89. Plaintiff: (1) "ha[s] charity as its primary, if not sole, object"; (2) "[is] performing in a manner that furthers its charitable object"; and (3) its "performance * * * involve[s] a gift or

giving." *Id*. Because Plaintiff's work is for the direct good and benefit of the public, with public benefit as its primary purpose and not merely a by-product, and there being no evidence or indication Plaintiff exists primarily to benefit its own members, the court concludes Plaintiff does qualify for the charitable property tax exemption under ORS 307.130.

### III.  CONCLUSION

For the reasons set forth above, the court concludes that, for the 2012-13 tax year, Plaintiff qualified for the charitable property tax exemption under ORS 307.130, in that Plaintiff's activities are for the direct good and benefit of the public or community at large, as required by OAR 150-307.130-(A)(3)(b).  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's request for property tax exemption for the portion of the premises leased by Orbis Cascade for the 2012-13 tax year is granted.

Dated this ___ day of July 2013.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on July 30, 2013.  The court filed and entered this Decision on July 30, 2013.*